[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
I. Factual and Procedural History
On February 23, 1995, the plaintiffs, George Casner and Sandra Casner, individually and as parents and guardians of infant Rebecca Casner, filed an eight count third revised complaint against the defendants, Alan Fine, M.D., David M. I Satloff, M.D. and Women's Health Care Assoc., P.C. The plaintiffs allege that the defendants' negligence caused Rebecca's birth defects, Sandra Casner's emotional distress concerning Rebecca's injuries, Sandra and George Casner's loss of consortium for Rebecca, Sandra's inability to bear children with George as well as her past and future medical expenses, George's loss of consortium for Sandra, George's inability to bear children with Sandra as well as his past and future medical expenses, and Sandra's loss of consortium for George.
By date of March 8, 1995, the defendants filed a motion to strike counts two, three, four, seven and eight of the plaintiffs' third revised complaint on the ground that each of the counts fails to state a legally sufficient cause of action. Specifically, the defendants argue that Connecticut does not recognize claims for bystander emotional distress, for filial loss of consortium, or for negligence where there is no duty owed to the particular plaintiff.
On March 21, 1995, the plaintiffs filed a memorandum in opposition to the defendants' motion to strike.
II. Discussion
A motion to strike tests the legal sufficiency of a CT Page 5077 pleading. Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 214-15, 618 A.2d 25 (1992). The court is limited to the facts in the complaint, which are construed most favorably to the plaintiff. Id., 215. The motion does not admit legal conclusions or opinions stated in the complaint.Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985).
A. Count Two: Emotional Distress
Connecticut does not recognize claims of bystander emotional distress for medical malpractice perpetrated on another.Maloney v. Conroy, 208 Conn. 392-93, 545 A.2d 1059
(1988). However, "a distinction is recognized between claims for bystander recovery and claims for negligent infliction of emotional distress based on the breach of a direct duty owed to the plaintiff-mother by virtue of the physician-patient relationship."Starr v. Merdinolu, 2 Conn. L. Rptr. 714 (November 1, 1990) (Cioffi, J.). See, e.g., Johnson v. Kaiser Foundation,
1994 CaseBase 5378 (May 13, 1994) (Gray, J.); Hyland v. State ofConnecticut, 7 Conn. L. Rptr. 222 (August 6, 1992) (Aurigemma, J.); Michaud v. Johnson, 4 CSCR 720 (August 16, 1989) (Schaller, J.); Martinez v. Bridgeport Hospital, 1 CSCR 568 (1986) (Spear, J.). The courts reason that inferring "that a mother is a by-stander at the birth of her infant manifests a basic misunderstanding of the duty owed a patient by a physician. In such circumstance . . . there are two within the zone of danger and the doctor owes a duty to each . . ." Hyland v. State ofConnecticut, supra.
While paragraph 19 of the second count does state that Sandra Casner "has suffered emotional distress concerning the injuries to her daughter," paragraph 9 discusses the duty to Sandra to use care in the diagnosis, treatment, and management of the pregnancy, and paragraph 13 discusses the actual delivery of the infant. The plaintiffs have alleged a failure to properly treat and advise Sandra Casner, so that her antibodies attacked her infant in utero. While the allegations arguably mix bystander emotional distress with negligent infliction of emotional distress for Sandra's own injuries, this would be more properly addressed by a request to revise, and there are sufficient allegations of injuries to Sandra herself throughout the duration of the pregnancy, the delivery, and post-pregnancy treatment.
Because Sandra was not a bystander under these facts, CT Page 5078 she must allege facts to support a finding that the defendants knew or should have known that their conduct involved an unreasonable risk of causing emotional distress, and that the distress if caused, might result in illness or bodily harm. SeeHyland v. State of Connecticut, supra, 7 Conn. L. Rptr. 223, citing Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 345, 398 A.2d 1180 (1978). The plaintiff has alleged facts sufficient to support such a claim, and therefore, the defendants' motion to strike count two is denied.
B. Counts Three and Four: Filial Consortium
The plaintiffs ask this court to recognize a parent's loss of consortium for his or her child. This court concedes that trial court decisions are split on the recognition of this cause of action. Our Supreme Court has held that "[t]he right to consortium is said to arise out of the civil contract of marriage and as such, does not extend to the parent-child relationship."Mahoney v. Lensink, 17 Conn. App. 130, 141,550 A.2d 1088 (1988), rev'd on other grounds, 213 Conn. 548,569 A.2d 518 (1990). See also Hopson v. St. Mary's Hospital,176 Conn. 485, 408 A.2d 260 (1979). This particular court has previously decided this issue in accordance with these appellate decisions. See e.g., Zamstein v. Marvasti,13 Conn. L. Rptr. 159, 162 (November 29, 1994) (Handy J.). Therefore, the defendants' motion to strike counts three and four is granted.
 C. Counts Seven and Eight: Duty to George Casner; Loss of Consortium
In count seven, George Casner alleges that he is unable to bear children with his wife, Sandra, because of the defendants' negligence. In count eight, which is derivative of count seven, Sandra Casner alleges a loss of consortium of George.
In Connecticut, a medical malpractice action is a type of negligence action. Martinez v. Hartford Hospital,4 Conn. L. Rptr. 57, 58 (1991) (Hennessey, J.). Malpractice is "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Emphasis added.)Davis v. Margolis, 215 Conn. 408, 415, 576 A.2d 489
CT Page 5079 (1990). A physician is required by law to exercise the degree of skill, care and diligence that is customarily demonstrated by physicians in the same line of practice. Logan v. GreenwichHospital Assn., 191 Conn. 282, 465 A.2d 294 (1983).
The four essential elements of a malpractice action are that (1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be the cause of the plaintiff's injury.LaBienic v. Baker, 11 Conn. App. 199, 202-203,526 A.2d 1341 (1987).
In order to satisfy the first element of a malpractice action, there must be a duty of care owed to the plaintiff by the defendant. The physician must exercise such reasonable skill and diligence in all aspects of providing care and treatment to a patient. Allen v. Guilano, 144 Conn. 573,135 A.2d 904 (1957). Therefore, it is necessary for the plaintiff to establish a physician-patient relationship. Sackter v. St.Onge, 8 Conn. L. Rptr. 614 (May 17, 1993) (Wagner, J.). See also Pokorny v. Shafer, 11 Conn. L. Rptr. 151 (April 11, 1994) (Wagner, J.). The plaintiffs do not allege that the defendants had a physician-patient relationship with the plaintiff George Casner.
The plaintiffs argue that because of the serious problems that may arise during pregnancy when the mother has an Rh negative blood type and the father has an Rh positive blood type and because of the integral role of the father's blood type, he "in essence, became a patient of the defendants". (Plaintiffs' Memorandum in Opposition to the Motion to Strike, p. 15.) In their memorandum, the plaintiffs have provided additional information as to the existence of a physician-patient relationship between George and the defendants, but the court is restricted to allegations in the complaint. Mingachos, supra.
The court disagrees with the plaintiffs' argument. Information about the father's blood type is integral for treatment of the mother's pregnancy, and a duty to the father does not arise from the process of obtaining such information.
In Burns v. Hanson, 13 Conn. L. Rptr. 593, 594 (May 8, 1995) (Stanley, J.), the court found that no physician-patient CT Page 5080 relationship existed between the father and the doctors who provided negligent fertility advice to his wife. The plaintiffs had alleged in the complaint that the defendant "fail[ed] to properly inquire about and inform "the plaintiffs of" their continued need to use birth control and the risks attendant to their failure to do so.' Id. The court held that that statement failed to allege that the plaintiff "was a patient of the defendants, or that the defendants otherwise owed a duty of care to him." Id. Similarly, in the present case, the allegation that the defendants "knew that Sandra Casner had an RH-negative blood type while her husband, George Casner, had an RH-positive blood type" is insufficient to support the finding of an existence of duty to George Casner.
In Starkweather v. Manchester Memorial Hospital,8 CSCR 464 (April 14, 1993) (Hammer, J.), the court found that there was no requirement of treatment in order to establish a physician-patient relationship, but it is distinguishable from the instant case. In Starkweather, the plaintiff brought a claim against a pathologist who misdiagnosed an allegedly malignant lesion in a biopsy report sent to and relied upon by the plaintiff's dermatologist.
The court, citing an Indiana appellate case, stated that "it is not necessarily required that a physician `must physically examine, see or treat the plaintiff, or prescribe medication for another person in order for a physician-patient relationship to exist.'" Id. The court also noted that the relationship terminates after the pathologist makes an examination and report. Id.
The facts of Starkweather are different from the present case, because there was never any duty owed to George Casner for any diagnosis of any type. The complaint alleges that the defendants knew George Casner's blood type. There is no allegation that the diagnosis was negligent. In the treatment of his wife's pregnancy, there is no further treatment to be done or diagnosis to be made concerning George Casner. Therefore, there is no duty owed to George Casner, and the defendants' motion to strike count seven is granted. Since count eight of plaintiffs' complaint, loss of consortium, claimed by Sandra Casner as to her husband, George Casner, is derivative to count seven, the motion to strike is also granted as to count eight. CT Page 5081
III. Conclusion
The defendants' motion to strike is granted as to counts three, four, seven and eight, and denied as to count two.
SUSAN B. HANDY JUDGE, SUPERIOR COURT